327 So.2d 852 (1976)
James E. McDANIEL et al., Appellants,
v.
LAWYERS' TITLE GUARANTY FUND, a Corporation, Appellee.
No. 75-475.
District Court of Appeal of Florida, Second District.
February 20, 1976.
Rehearing Denied March 23, 1976.
*853 James M. McDaniel, of Moore, McDaniel & Tsonas, Clearwater, for appellants.
Robert R. Tench, Clearwater, for appellee.
GRIMES, Judge.
This is a close case involving a suit upon a title insurance policy.
In connection with their purchase of land from Mr. and Mrs. Skinner, appellants were issued a title insurance policy by Lawyers' Title Guaranty Fund (Fund) which guaranteed that they were the fee simple owners of the property. It later came to the attention of the appellants that Florida Power Corporation owned an easement across the east edge of the property for the purpose of maintaining a single pole electric power transmission line. Even though the easement was recorded, there was no reference to the easement in either the Skinner deed or in the title insurance policy. No survey of the property was made in connection with the purchase. It was agreed that if a survey had been *854 made, it would have reflected the existence of the power line running across the edge of the property.
The appellants saw the power line when they purchased the land, but they contend that they did not know that the line was within the boundaries of the property. This fact only became known when a survey was made in preparation for the sale of soil material from the land. Appellants contend that they relied upon the representations of the policy concerning title when they purchased the land. Upon these facts, the court entered summary judgment for the Fund.
The pertinent provisions of the title insurance policy are as follows:
"IN CONSIDERATION of the above named attorney at law (or firm of attorneys at law) having qualified as and being a member (or members) of LAWYERS' TITLE GUARANTY FUND, LAWYERS' TITLE GUARANTY FUND (a business trust under the provisions of the Declaration of Trust filed with the Secretary of State of Florida, at Tallahassee, Florida, on March 22, 1947, and any amendments to the Declaration of Trust) subject to the Conditions herein, guarantees to the Owner named above, the Owner's legal representative, heirs, and/or devisees, that the estate or interest of the Owner specified in Schedule A hereof in the real estate described in said Schedule A is free of encumbrances, liens, and other objections, except such encumbrances, liens and other objections as are referred to in Schedule B hereof; and, subject to the Conditions herein, will pay to the Owner all loss or damage, in an amount not to exceed the amount of the declared value of the property, as stated above, the Owner may sustain because of encumbrances, liens, or other objections on or to the estate or interest of the Owner that are not excepted in Schedule B (or excluded in the Conditions) hereof... .
* * * * * *
SCHEDULE A[1]
* * * * * *
SCHEDULE B
"This opinion and guarantee, in addition to any exceptions in the description in Schedule A-3 hereof, is subject to:
1. All taxes for the year of the effective date of this opinion and guarantee, unless noted here that such taxes have been paid.
2. Rights of persons in possession, other than the Owner.
3. Facts that an accurate survey or personal inspection of the property disclosed or would have disclosed.
4. Unrecorded labor, mechanic, or materialman liens.
5. Zoning and/or other restrictions and prohibitions imposed by governmental authority.
6. Easements and other encumbrances appearing in the plat or drawings referred to under Schedule A-3. Other restrictions, easements and reverter rights, as follows: (If none, so state; if any, copy or make accurate reference thereto.) NONE[2]"
The trial judge predicated his ruling upon the fact that the power poles were visible and in actual possession of Florida Power Corporation within the legal meaning of that term at the time the title insurance policy was issued. With due respect for the logic of his position, we are persuaded to reverse.
A policy of title insurance is like any other kind of insurance in the sense *855 that any ambiguity or any uncertainty in the exceptions in the policy will be strictly construed against the insurer. Goode v. Federal Title and Insurance Corporation, Fla.App.2d, 1964, 162 So.2d 269. Here, the policy guaranteed that appellants owned fee simple title subject to specifically enumerated encumbrances, and the word "none" was inserted in Schedule B of the policy where any such encumbrances were to be listed. Yet, Schedule B otherwise seeks to limit liability to the extent of certain exceptions therein, and the second and third exceptions if considered together would appear to exclude liability under the facts of this case. Considered as a whole, we believe the policy is ambiguous and fails to give the insured the information he needs concerning the true status of the title.
The man on the street buys a title insurance policy to insure against defects in the record title. The title insurance company is in the business of guaranteeing the insured's title to the extent it is affected by the public records. The exceptions set forth in Schedule B refer generally to situations which may affect the title but which would not be reflected by an examination of the public records. A title insurance company has no other feasible method of protecting itself from these circumstances, but here the Fund totally overlooked the recorded easement of the Florida Power Corporation.
As this court held in Guarantee Abstract & T. Ins. Co. v. St. Paul F. & M.I. Co., Fla.App.2d, 1968, 216 So.2d 255, before the rights of parties in actual possession can be excepted from the coverage of a title insurance policy, the circumstances reflecting the possession should be such as would be apparent to a person who visited the property. The appellants assert that they did not know that the power lines crossed the property. They affirmatively contend that they relied upon the guarantee of the policy that there were no recorded encumbrances against the property. In the face of this positive but inaccurate assurance, we are unwilling to hold as a matter of law that the appellants bore the risk of this error simply because they chose not to obtain a survey. In light of the purpose to be served by the exception relating to the requirement for a survey, we construe it as applicable only to those defects in the title which are not ascertainable from the public records or so obvious that a reasonable person upon inspection of the premises should perceive the encumbrance.
In reaching our conclusion, we have not ignored Van Ness v. Royal Phosphate Co., 1910, 60 Fla. 284, 53 So. 381. In that case, Van Ness had given a railroad company an easement across his property. When Van Ness sold the property, he failed to except the easement from the covenants of his warranty deed. The purchasing phosphate company later sued Van Ness for damages on his warranty, because it was prevented from extracting the minerals from under the easement. The opinion does not reflect whether the easement was recorded, though dicta in a prior opinion involving the same easement suggests that recording had taken place. The court apparently reasoned that since the tracks had been laid for many years, the purchaser must have known of the existence of the easement and fixed its price with reference to the condition of the land at the time of the purchase. Therefore, the court held that the purchaser could not take advantage of the grantor's mistake in failing to except the easement from the covenants of his warranty.
Van Ness is distinguishable in two particulars. First, the case was a suit on the covenants of warranty rather than one involving the interpretation of the terms and provisions of a title insurance policy. Second, there is no suggestion that there could have been any doubt in the mind of the purchaser that the railroad track ran across the subject property. Here, the appellants assert that even though they saw the power line, they were only concerned *856 with obtaining a certain quantity of raw acreage and didn't realize that the line was within the east boundary of the property.
In Overholtzer v. Northern Counties Title Ins. Co., 1953, 116 Cal. App.2d 113, 253 P.2d 116, a title insurance policy had been issued to Overholtzer which failed to except a recorded easement over the subject property. The easement was for the purpose of maintaining a water pipe across the northerly boundary. Though the pipe was supposed to be underground, it was exposed in several places. Overholtzer had been advised of its existence and told that it led to the property of a neighboring owner. However, he did not know that the pipeline had been constructed pursuant to the grant of an easement. In upholding a recovery against the title company, the court said:
"The title company next points to one of the exceptions contained in the policy to the effect that the company does not insure against `Any facts which a correct survey and inspection of said land would show,' and contends that it was entitled to a finding as to what an inspection would show. The evidence is conflicting as to what an inspection would have shown. This contention is simply another way of stating the reliance argument... . If ... the Overholtzers acted reasonably in relying on the policy and reasonably believed, based on the terms of the policy, that there was no easement, then, obviously, inspection would not have disclosed the existence of the easement. The court has found reliance, and, this being so, failing to find on what an inspection would have disclosed was not error."
The significance of the California decision to the instant case is the emphasis on reliance. If it is shown that the appellants had actual knowledge that Florida Power Corporation had an easement over their property, then it could not be said that they relied upon the Fund's policy in making their purchase. Likewise, since the existence of the power line would ordinarily be sufficient to put a person upon notice to make an inquiry as to whether an easement existed, if the line crossed the middle of the subject property the appellants could not reasonably say that they did not know or should not have known of the existence of the easement. However, since the power line traversed the edge of the property, it does not follow that a reasonable person must be held to the constructive knowledge that the easement was inside the boundary line. In Atlantic Mortgage & Finance Co. v. Hamilton, 5th Cir.1930, 40 F.2d 583, the Fifth Circuit Court of Appeals held that a purchaser's knowledge of the existence of a sidewalk when taking an option to purchase some lots did not impute to him notice that the sidewalk was on the north ten feet of the lots themselves. In that case arising out of Florida, the purchaser was permitted to recover his option money where the sidewalk was laid pursuant to a recorded easement and the option agreement failed to except the easement as an encumbrance upon the title. But see Florida Power & Light Company v. Rader, Fla.App.4th, 1975, 306 So.2d 565.
One of the reasonable expectations of a policyholder who purchases title insurance is to be protected against defects in his title which appear of record. See Pruett v. Mississippi Valley Title Insurance Co., Miss. 1973, 271 So.2d 920. Therefore, it cannot be said as a matter of law that appellants were not entitled to rely upon the Fund guarantee that there were no recorded easements upon the property.
The summary judgment is reversed, and the case is remanded for trial on the issue of whether the appellants reasonably relied upon the Fund policy that there were no defects in the record title to the property.
McNULTY, C.J., and BOARDMAN, J., concur.
NOTES
[1] Schedule A contained the name of the owners, the description of the property and a statement that the estate or interest of the owner covered by the document was fee simple.
[2] All of the policy which is quoted above was part of the printed form except for the word "NONE" which was typed following the sixth item in Schedule B.