458 So.2d 434 (1984)
CITY OF WINTER HAVEN, a Florida Municipal Corporation, Appellant,
v.
RIDGE AIR, INC., a Florida Corporation, Appellee.
No. 83-2282.
District Court of Appeal of Florida, Second District.
November 14, 1984.
Neal E. Young of Wheeler & Traviss, P.A., Winter Haven, for appellant.
Joe L. Sharit, Jr. of Straughn, Sharit, Bunn & Chilton, P.A., Winter Haven, for appellee.
BOARDMAN, Acting Chief Judge.
Appellant, the City of Winter Haven, challenges the trial court's order construing the City's lease of a portion of the Winter Haven Municipal Airport to appellee, Ridge Air, Inc., for the corporation's use as a fixed base operation. We agree that the trial court erred in its construction and interpretation of the lease and, therefore, reverse.
In 1976, the City executed a five-year lease with Ridge Air which contained an option to renew for an additional five-year term. The lease specifically stated, however, that its terms were subject to renegotiation *435 should the lessee elect to exercise the option and that the lessee would have to vacate the premises at the end of the original five-year period unless negotiations resulted in mutually satisfactory terms governing the renewal.
The lease incorporated, as part of the agreement between the City and Ridge Air, city resolution 68-27, which set forth the then-existing standards for fixed base operators and airport tenants (FBO standards). Although paragraph fourteen of those FBO standards made reference to periodic rent adjustments based upon the cost of living index,[1] paragraph eighteen stated that the terms of the actual lease agreement would control over any conflicting standard.[2]
Approximately one and one-half years before the expiration of the original term of Ridge Air's lease, the City adopted a new airport lease policy which substantially increased the ground rental to be exacted under future airport leases. When Ridge Air later notified the City of its desire to renew its lease, the City responded that the new prevailing municipal policy would govern negotiation of the terms of such renewal.
Throughout the ensuing negotiations between Ridge Air and City officials, the lessee maintained that it could not afford to pay rental under the new city lease policy; yet, Ridge Air made no counterproposals of its own. When these negotiations failed to result in a new lease agreement, the City terminated Ridge Air's tenancy of the airport property.
The lessee brought the instant action against the City, seeking a declaratory judgment of the parties' rights under the original lease. The trial court's judgment, which is the subject of this appeal, contained the following findings of fact, as pertinent to the issues raised:
1. The City did not negotiate seriously or in good faith;
2. The proposed lease submitted by the City to Ridge Air during the course of negotiations was not consistent with the FBO standards incorporated into the original lease; and
3. The exacting demands of the proposed lease had "a chilling effect on the negotiations between the parties, which resulted in [Ridge Air's] not submitting a counterproposal."
The trial court then concluded as a matter of law that paragraph fourteen of the FBO standards concerning future rent adjustments "governed the negotiations between the parties, or at least set a guideline for negotiations until clearly repealed," and that "good faith required[d] the City to make offers within the reasonable expectations of the parties." We find error in this conclusion of law.
Although the trial court undoubtedly attempted to reach a result which it deemed fair and equitable both to Ridge *436 Air and to the City, it was not free to rewrite the parties' agreement or to substitute its judgment for that of the lessor and lessee. See Saha v. Aetna Casualty & Surety Co., 427 So.2d 316, 317 (Fla. 5th DCA 1983); Steiner v. Physicians Protective Trust Fund, 388 So.2d 1064, 1066 (Fla. 3d DCA 1980), petition for review denied, 397 So.2d 779 (Fla. 1981); Lane, Gelety, Woolsey & Centrone, P.A., Inc. v. Woolsey, 377 So.2d 743, 745 (Fla. 4th DCA 1979), cert. denied, 388 So.2d 1120 (Fla. 1980). As this court recognized in Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788, 791 (Fla. 2d DCA 1978), "When a contract is clear and unambiguous, ... the court cannot give it any meaning beyond that expressed." Accord Saha, 427 So.2d at 317; Ranger Insurance Co. v. Harrell, 286 So.2d 261, 262 (Fla. 2d DCA 1973).
Paragraph three of the City's lease to Ridge Air provided, in part, as follows: "Lessee may apply for an additional term of five (5) years ... and any such renewal shall be subject to a renegotiation of the terms hereof." This plain, unambiguous language constitutes the best evidence of the parties' intentions regarding renewal, see Department of Motor Vehicles v. Mercedes-Benz of North America, Inc., 408 So.2d 627, 629 (Fla. 2d DCA 1981); Schweitzer v. Seaman, 383 So.2d 1175, 1178 (Fla. 4th DCA 1980); Boat Town U.S.A., Inc. v. Mercury Marine Division of Brunswick Corp., 364 So.2d 15, 17 (Fla. 4th DCA 1978), and the trial court was required to follow it. Ridge Air possessed only the right to negotiate for renewal of its lease. The terms of renewal remained totally open to negotiation, without limitation either by the lease paragraph granting the option or by any other portion of the agreement.
Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.
DANAHY and LEHAN, JJ., concur.
NOTES
[1] Paragraph fourteen states:

Beginning with the effective date of this Resolution, leases to Fixed Base Operators and Airport Tenants shall be limited to a maximum of [blank] years. In addition, leases shall, at the discretion of the City, be subject to review and re-evaluation at the end of each five (5) year period thereof, in relation to the national cost of living. In this regard, when at the end of each of said five (5) year periods the Department of Commerce Consumer Price Index is determined by the City to be five (5) or more per cent higher than at the date the lease became effective, the rental terms thereof may be increased to such percentage of increase or of said cost of living index. If at the end of such five (5) year periods the said cost of living index has changed less than five (5) per cent, then the City shall take no action to review or reevaluate the lease.
We agree with the City's assertion that this clause provides for discretionary rent escalation under a predetermined formula at the end of each five-year period of an airport lease which extends beyond a five-year term. Consequently, the clause appears to have no application to the lease presently before us.
[2] Paragraph eighteen provides: "In the event of any conflict between the terms of these minimum standards and the provision of any lease of a portion of the Airport property, the terms of the lease shall be controlling."