489 So.2d 99 (1986)
CAREFREE VILLAGES, INC., and Thomas J. Flatley, Appellants,
v.
KEATING PROPERTIES, INC., and First American Title Company of Sarasota, Appellees.
No. 85-1415.
District Court of Appeal of Florida, Second District.
May 7, 1986.
Rehearing Denied June 2, 1986.
*100 W. Cort Frohlich, of Wotitzky, Wotitzky, Wilkins, Frohlich & Jones, Punta Gorda, for appellants.
Douglas C. Zahm, of Stuzin and Camner, P.A., St. Petersburg, for appellee, First American Title Co. of Sarasota.
PER CURIAM.
Appellants, Carefree Villages, Inc., and Thomas J. Flatley, sellers of real property, seek review of a final judgment entered in favor of the appellees, J.S. Keating Properties, Inc., and First American Title Company of Sarasota. We reverse.
The events leading up to this lawsuit commenced on March 15, 1983, when John Keating, principal of Keating Properties, sent a letter of intent to Richard Pittenger, president of Carefree Villages, indicating an interest in purchasing Port Charlotte Village, a mobile home park. Keating (the buyer) had been involved in the conversion, from leasehold to fee simple ownership, of several mobile home parks in Florida. Pittenger (the seller) met with the buyer's agent and advised him that there existed some lifetime leases with the tenants but that he thought they could be broken. He gave the agent a sample form of the park's lifetime lease, but did not show the buyer any of the executed leases at that time.
On May 9, 1983, the buyer and seller executed a contract for purchase of the park. The contract did not mention conversion of the leases. Paragraph 1 of the contract required the seller to produce a title insurance binder providing for the issuance of an owner's policy of title insurance subject only to the mortgage described in the paragraph, to certain county zoning regulations, to easements of record, and to 1983 taxes. An agent of First American Title Company signed the contract, representing that the company had received $50,000 from the buyer as an earnest money deposit.
Subsequent to executing the contract, the buyer's agent reviewed the executed leases and various financial records of the park. According to the agent, he learned that the financial information received prior to executing the contract was inaccurate, that 280 of the leases were lifetime leases and that, because the seller did not have copies of the remaining leases, they could also be lifetime leases. After receiving an opinion from an attorney that the lifetime leases could not be broken, the buyer sought permission to canvass the tenants one-by-one to ascertain the number of potential conversion purchasers. He also sought an extension of time in which to close the transaction. The seller refused both of these requests. Four days prior to the scheduled closing date, the seller was *101 informed by letter that the buyer would not close as scheduled. The seller then made a demand upon First American Title Company for the earnest money deposit and was advised for the first time that the title company had accepted a promissory note in lieu of money.
A complaint was filed alleging, in count I, that the buyer had defaulted under and breached its contract and that the seller was therefore entitled to the earnest money deposit. In count II, it was alleged that First American Title Company had breached its fiduciary duty by failing to receive and hold in escrow and to pay over to the seller the earnest money deposit specified in the contract. The parties stipulated that First American Title Company would be liable to the seller if the deposit was properly forfeited, providing it was not shown at trial that the seller knew of the substitution of the note for cash.
At trial, the buyer argued that the title insurance binder produced by the seller failed to comply with paragraph 1 of the contract because it excepted "rights of parties in possession," an exception not provided for in the paragraph. The buyer claimed that this exception, in view of the lifetime leases, substantially encumbered the title to the property.
Another controversy at trial stemmed from an interpretation of the rescission rights contained in paragraph 8 of the contract. This paragraph provided as follows:
8. At any time prior to the July 29, 1983, closing date, and within usual business hours, Buyer shall have the right to inspect the books and records of Sellers so far as they relate to PORT CHARLOTTE VILLAGE. Buyer or Buyer's agent may enter upon the premises for the purposes of conducting engineering surveys, soil borings, water and sewer analysis, structural analysis, and other activities deemed by Buyer appropriate in order fully to acquaint Buyer with the property. If the inspection herein provided, together with such investigation as Buyer may desire to make concerning compliance with governmental regulations permitting utilization of the property for a mobile home park containing 436 spaces, reveals that those conditions have not been met, Buyer may rescind this transaction and receive back the earnest money deposit this day paid; or Buyer may, without abatement of the purchase price, proceed to close.
The buyer argued that it could rescind the contract if dissatisfied after inspecting the books and records, or if refused permission to perform "other activities deemed by the buyer appropriate in order fully to acquaint buyer with the property." The buyer claimed that "other activities" included the right to canvass tenants. The seller responded that the language of paragraph 8 did not permit a rescission based upon an inspection of the books and records, and that the "activities" contemplated by the paragraph were those designed to acquaint the buyer with the physical attributes of the property. Both parties conceded that the "conditions" mentioned in the last sentence of the paragraph granting the right of rescission could be any conditions set forth in the contract. The court ruled that the language was ambiguous and that it would allow parol evidence concerning the meaning of the paragraph.
At the conclusion of trial, the court found for the buyer, orally stating that the seller had failed to comply with the requirements of the contract, specifically with regard to the provisions concerning encumbrance of title. The court next ruled that "activities deemed appropriate by the buyer to fully acquaint itself with the property" included the right to talk to tenants about their leases because the leases were a substantial encumbrance on the property. The court also found that it was represented to the buyer, prior to execution of the contract, that the lifetime leases were not binding. In connection with count II, the court found the substitution of a promissory note for the earnest money deposit not to be an issue. These findings were made orally and were not included in the final judgment. After a motion for rehearing *102 was denied, the seller filed a timely notice of appeal.
The seller first argues that the court erred in finding that paragraph 8 of the contract was ambiguous and in considering evidence of alleged negotiations and representations made prior to the written contract. We agree and hold that paragraph 8 of the contract is not ambiguous.
The language of paragraph 8 clearly allows the buyer to inspect the seller's books and records, an activity the buyer in this case was allowed to, and did, conduct. The phrase "other activities" pertains to the physical characteristics of the property and makes no reference, either directly or by reasonable implication, to canvassing the tenants regarding their leases or their amenability to conversion purchase. Where a contract is silent as to a particular matter, the trial court should not impose on the parties contractual rights and duties that they themselves have omitted. Gulf Cities Gas Corp. v. Tangelo Park Service Co., 253 So.2d 744 (Fla. 4th DCA 1971). If the buyer wanted to make viability of the contract contingent upon satisfaction with the financial information contained in the books and records or upon its ability to convert the leases, the buyer should have so provided.
We read the "conditions" mentioned in the last sentence of the paragraph as referring to whatever inspection was necessary to ensure that governmental regulations have been complied with. Even conceding, as the parties did, that "conditions" could include any conditions set forth in the entire contract, the contract does not provide that the buyer must be satisfied with the information contained in the books and records or that the leases must be successfully converted. Contracts should be construed according to their clear and unambiguous terms, Cueto v. John Allmand Boats, Inc., 334 So.2d 30 (Fla.3d DCA), cert. denied, 341 So.2d 290 (Fla. 1976), and where clear and unambiguous, they should not be given any meaning beyond that expressed. City of Winter Haven v. Ridge Air, Inc., 458 So.2d 434 (Fla.2d DCA 1984).
The buyer argues that because of the ambiguity of paragraph 8, the trial court correctly considered extrinsic evidence of alleged negotiations and representations made prior to execution of the written contract. We acknowledge that where the language of a contract is unclear as to a particular right or duty, the court may receive extrinsic evidence to determine the intent of the parties. Gulf Cities. In view of our holding that the contract was not ambiguous, however, the argument has no merit.
The buyer, moreover, did not plead that the seller had misrepresented the financial status of the park, and the court made no such finding. The seller's statement that he thought the lifetime leases could be broken was nothing more than an opinion, upon which no action for misrepresentation could be grounded. See Hart v. Marbury, 82 Fla. 317, 90 So. 173 (Fla. 1921); Vokes v. Arthur Murray, Inc., 212 So.2d 906 (Fla.2d DCA 1968); see also, Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla.2d DCA 1961).
We also agree with the seller's next argument that the title binder's exception for rights of parties in possession did not constitute an encumbrance on title. Actual, open and obvious possession is constructive notice of whatever right the occupant has in the land and puts upon inquiry those acquiring any title to the land to ascertain the nature of the rights the occupant has in the premises. Blackburn v. Venice Inlet Co., 38 So.2d 43 (Fla. 1948); Florida Power & Light Co. v. Rader, 306 So.2d 565 (Fla. 4th DCA 1975). Here, in addition to constructive notice, the buyer had actual notice of the lifetime leases and had in its possession a sample copy of the leases before the contract was signed. Rights of parties in actual possession of land are properly excepted from the coverage of title insurance policies where the circumstances reflecting possession should be apparent to one who visits and inspects the property. See Guarantee Abstract & Title Insurance Co. v. St. Paul Fire & *103 Marine Insurance Co., 216 So.2d 255 (Fla.2d DCA 1968).
We hold, therefore, that the trial court erred in ruling that the seller failed to comply with the contract and was not entitled to the earnest money deposit. We, accordingly, reverse the judgment entered in favor of Keating Properties, Inc., and remand with instructions to enter a judgment in favor of Carefree Villages Inc., and Thomas J. Flatley. As the record contains no evidence that the seller knew of the substitution of a promissory note for cash, judgment should also be entered against First American Title Company. Upon remand, the court shall award reasonable attorney's fees to the seller as provided for in the contract for purchase.
Reversed and remanded.
RYDER, C.J., and GRIMES and SCHOONOVER, JJ., concur.