544 So.2d 1070 (1989)
LAWYERS TITLE INSURANCE CORPORATION, Appellant,
v.
D.S.C. OF NEWARK ENTERPRISES, INC., Appellee.
No. 88-1230.
District Court of Appeal of Florida, Fourth District.
June 7, 1989.
Rehearing Denied July 13, 1989.
*1071 W.C. Hutchison, Jr., and Stephen H. Coover of Hutchison, Mamele & Coover, Sanford, for appellant.
Richard B. Candler of Smith, O'Haire, Quinn & Garris, Vero Beach, for appellee.
HERSEY, Chief Judge.
Lawyers Title Insurance Corporation appeals a partial summary judgment in favor of its insured, D.S.C. of Newark Enterprises, Inc. The facts upon which the liability of the title company was predicated were established by stipulation of the parties. Of several defects in the title to a parcel of real property alleged in the early pleadings, only one remains in controversy. The defect in question consists of outstanding mineral interests not specifically excepted from the policy of title insurance. The position of appellant, the title insurer, is that such interests constitute a condition that was "created, suffered, assumed or agreed to by the Insured" and therefore the insured is not entitled to recover under the policy. The trial court disagreed, holding appellant liable and reserving jurisdiction on the issue of the amount of damages. We affirm.
In 1969, Mary Farms, Inc. held title to approximately 9200 acres of real property located in Volusia County, Florida. Lawyers Title issued a binder for title insurance to Kad Realty, Inc. in anticipation of a sale by Mary Farms to Kad Realty. At the same time, the attorney for Kad Realty wrote a letter to Mary Farms, pointing out certain title defects and indicating that correction of the defects would be required before his client would close on the purchase.
Both the title binder and the attorney's title opinion letter contained errors of omission. The opinion letter forms the basis for appellant's claim that the defective condition was known to the purchaser at the time title passed so that the purchaser, in legal effect, assumed or agreed to the defect, thereby relieving the title insurer of liability.
The error of omission in the attorney's opinion on title results from its failure to reflect certain deeds which referred to a one-half interest in mineral rights affecting approximately 2519 acres of the 9200-acre parcel. The opinion did, however, refer to an earlier deed which referenced all of the outstanding mineral interests. It is by virtue of this reference that the title insurance company claims that the purchaser was put on notice as to the outstanding one-half interest neither specifically enumerated in the opinion letter nor excepted by the title binder.
The family of V.J. Coraci was the sole stockholder of all of the corporations involved in the purchaser's role in this controversy. The contract purchaser was Kad Realty and the initial conveyance was to *1072 Newark Paraffine Paper Company. Appellee, D.S.C. of Newark Enterprises, Inc., succeeded to these interests in the 9200-acre parcel. The opinion letter showed on its face that a copy was being furnished to V.J. Coraci. There is no other evidence bearing on the issue of notice to the purchaser of the outstanding mineral interest.
One additional document must be noted as bearing on this title transaction. The title insurer had in its file an unsigned endorsement to the title insurance policy which did reference the otherwise omitted mineral interests. There is no evidence that this was ever delivered or that its existence was made known to any other party before the commencement of this litigation.
In 1981, D.S.C. entered into a contract for sale of the premises to J.L. Todd Company. Because of the outstanding mineral interests Todd refused to close and brought suit for rescission. The purchase and sale agreement was rescinded, giving rise to D.S.C.'s damages.
D.S.C. seeks recovery under its title insurance policy. The title insurer raises the affirmative defense that the insured knew about the condition before taking title and by taking title with knowledge, agreed to and assumed the existing condition.
Examination of record title or an abstract of the record title of real property is both an esoteric and a painstaking process. Evaluation of the status of title requires considerable expertise. L. Smirlock Realty Corp. v. Title Guarantee Company, 52 N.Y.2d 179, 418 N.E.2d 650, 437 N.Y.S.2d 57 (1981), aff'd, 63 N.Y.2d 955, 473 N.E.2d 234, 483 N.Y.S.2d 984 (1984). It was for these reasons that the concept of title insurance was developed and similar reasoning has made the furnishing of title insurance a successful business. It is also appropriate to note that title insurance is not casualty insurance. § 627.784, Fla. Stat. (1987). A policy issues based upon the informed opinion of title examining experts employed by the company that title is in the condition expressed in the policy. Krause v. Title & Trust Company of Florida, 390 So.2d 805 (Fla. 5th DCA 1980); § 627.7845, Fla. Stat. (1987). As a matter of public policy a duty is imposed upon the title company to make a thorough and competent search of the record title. Shada v. Title & Trust Company of Florida, 457 So.2d 553, 557 (Fla. 4th DCA 1984), rev. denied, 464 So.2d 556 (Fla. 1985); McDaniel v. Lawyers' Title Guaranty Fund, 327 So.2d 852, 855 (Fla. 2d DCA 1976). This duty is codified by statute in Florida. § 627.784, Fla. Stat. (1987).
Given the foregoing it follows that the title insurance company does not and should not avoid liability when a defective condition of title not excepted from coverage subsequently causes a loss to the insured even though the insured knew or should have known of the particular defect. That is the general principle on which we resolve this case, although we are aware that its appropriate application is not without exception.
One exception to the rule that has been developed in the case law is that coverage will not be extended for conditions that are physically observable by an inspection of the premises. An example would be a tenant in obvious possession of the real property. See, e.g., McDaniel, 327 So.2d at 856; Lawyers Title Guaranty Fund v. Milgo Electronics, 318 So.2d 416, 419 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 602 (Fla. 1976). Also excluded are conditions that are expressly assumed by the insured, such as an existing mortgage. See Bradford v. Thompson, 460 S.W.2d 932 (Tex. Civ.App. 1970), reversed in part on other grounds, 470 S.W.2d 633 (Tex. 1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1174, 31 L.Ed.2d 232 (1972).
The title insurer will not be held to have extended coverage to a condition which results from the fraud of the insured. See Applefield v. Commercial Standard Insurance Company, 176 So.2d 366 (Fla. 2d DCA), cert. denied, 183 So.2d 209 (Fla. 1965). Also, since there is an element of reliance involved in the analysis of whether the title insurer should be held liable it is more difficult for an insured to recover where title is first taken and then *1073 title insurance is procured. See Lawyers Title Insurance Corporation v. Research Loan and Investment Corporation, 361 F.2d 764 (8th Cir.1966).
Finally, the courts have been loathe to impose liability on a title insurer for a condition of which the insured had actual, express knowledge. See, e.g., Carefree Villages, Inc. v. Keating Properties, Inc., 489 So.2d 99 (Fla. 2d DCA 1986); Parker v. Title & Trust Company of Florida, 429 So.2d 1267, 1269 (Fla. 1st DCA 1983); Guarantee Abstract & Title Insurance Company v. St. Paul Fire & Marine Insurance Company, 216 So.2d 255, 257 (Fla. 2d DCA 1968). We do not attempt to define the limits of the apparent exceptions here nor to reconcile them with the public policy expressed earlier. On the facts of this case we do not find such actual, express knowledge as would exempt the title insurer from liability. Accordingly, we affirm the partial summary judgment.
AFFIRMED.
STONE and WARNER, JJ., concur.