CRENSHAW, Judge.
Jack Morton, Alexander J. Debay, and Tea Lake Investments, LLC (the Buyers) appeal the trial court’s final summary judgment in favor of Attorneys’ Title Insurance Fund (the Fund) and the Boyds (the Sellers). Because the Fund failed to discover an easement of record and the Sellers conveyed less than what was bargained for in the sales contract, we reverse.
In 2005, the Buyers purchased a 1.12-acre parcel of land from the Sellers and obtained a title insurance policy from the Fund which included coverage for loss or damage incurred by “any defect in or lien or encumbrance on the title.” The sales contract provided that the Sellers would convey marketable title by statutory warranty deed.
Schedule A of the title insurance policy listed the names of the insured Buyers, described the Buyers’ fee simple interest in the land, and incorporated by reference a description of the land. The policy’s Schedule B provided the following exceptions from coverage:
This policy does not insure against loss or damage by reason of the following exceptions:
1. Taxes for the year of the effective date of this policy and taxes or special assessments which are not shown as existing liens by the public records.
2. Rights or claims of parties in possession not shown by the public records.
3. Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the premises.
4. Easements or claims of easements not shown by the public records.
5. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.
6. Any adverse ownership claim by the state of Florida by right of sovereignty to any portion of the lands insured hereunder, including submerged, filled and artificially exposed lands, and lands accreted to such lands.
7. The lien of all taxes for the year 2005 and thereafter, which are not yet due and payable.
8. Riparian and littoral rights are not insured.
9. This land lies within Water Management District, and may be subject to assessments, if any, and any rules and regulations which said District may be allowed to establish.
*70 10. Exceptions number 2. and 5. contained herein are hereby deleted.
(Emphasis added.)
The Buyers failed to obtain a survey of the property before closing and later discovered that Highlands County held a maintenance easement encumbering the parcel. The easement was created to maintain a creek that ran along the southern boundary of the property, and prevented the Buyers from building a residential structure on the land. The Buyers subsequently filed suit, arguing the Fund was liable under the title insurance policy and the Sellers breached the sales contract by failing to deliver clear title. The record reflects an accurate survey would have revealed the easement.[1] The court entered summary judgment for the Fund and the Sellers, finding that the accurate survey exception, listed as the third exception in Schedule B to the title insurance policy, barred the Fund’s liability, and that the sales contract merged into the Sellers’ warranty deed, which made an exception for recorded easements. This appeal followed.
We conclude that the trial court improperly entered summary judgment for the Fund and the Sellers. This court reviews a final summary judgment de novo. JP Morgan Chase v. New Millennial, LC, 6 So.3d 681, 684 (Fla. 2d DCA 2009). “Summary judgment should be granted only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, and (2) the moving party is entitled to a judgment as a matter of law.” Id. Here, the Buyers argue the trial court erred in granting summary judgment for the Fund because the accurate survey exception does not apply where the easement was of public record. We agree and find that McDaniel v. Lawyers’ Title Guaranty Fund,, 327 So.2d 852 (Fla. 2d DCA 1976), controls.
In McDaniel, the buyers were issued a title insurance policy containing coverage exceptions similar to those found here. Specifically, Schedule B of the title insurance policy in McDaniel provided the following:
This opinion and guarantee, in addition to any exceptions in the description in Schedule A-3 hereof, is subject to:
1. All taxes for the year of the effective date of this opinion [a]nd guarantee, unless noted here that such taxes have been paid.
2. Rights of persons in possession, other than the Owner.
3. Facts that an accurate survey or personal inspection of the property disclosed or would have disclosed.
4. Unrecorded labor, mechanic, or ma-terialman liens.
5. Zoning and/or other restrictions and prohibitions imposed by governmental authority.
6. Easements and other encumbrances appearing in the plat or drawings referred to under Schedule A-3. Other restrictions, easements and reverter rights, as follows: (If none, so state; if any, copy or make accurate reference thereto.) NONE
Id. at 854 (emphasis added). Just as the Buyers here failed to obtain a property survey in connection with their purchase, the McDaniel buyers also failed to do so and subsequently discovered a maintenance easement which was of public record. This court reversed summary judg *71 ment for the insurer and held that a title insurer cannot hide behind its policy’s accurate survey exception to avoid liability when a title defect is of record:
In the face of this positive but inaccurate assurance, we are unwilling to hold as a matter of law that [the buyers] bore the risk of this error simply because they chose not to obtain a survey. In light of the purpose to be served by the exception relating to the requirement for a survey, we construe it as applicable only to those defects in the title which are not ascertainable from the public records or so obvious that a reasonable person upon inspection of the premises should perceive the encumbrance.
Id. at 855.
In reaching the above conclusion in McDaniel, this court considered the purpose of title insurance:[2] “The man on the street buys a title insurance policy to insure against defects in the record title.” Id. (emphasis added); see Lawyers Title Ins. Corp. v. D.S.C. of Newark Enters., Inc. 544 So.2d 1070, 1072 (Fla. 4th DCA 1989) (stating that title insurance was developed and is a successful business because examination of record title is “both an esoteric and a painstaking process” requiring considerable expertise); Krause v. Title & Trust Co. of Fla., 390 So.2d 805, 806 (Fla. 5th DCA 1980) (defining title insurance as a guaranty that a search in the chain of title is accurate and expresses the quality of the title reflected in the record). Because the policy functions as a guaranty, the buyer who purchases title insurance reasonably expects to be protected against title defects which appear of record. McDaniel, 327 So.2d at 856.
This court also noted in McDaniel that coverage exceptions in title insurance policies serve as the only “feasible method” to protect the insurers from circumstances that affect title but are not reflected by an examination of the public records. Id. at 855; see, e.g., Louisville Title Ins. Co. v. Guerard, 409 So.2d 514 (Fla. 5th DCA 1982) (finding the insurer had no duty to indemnify the buyer because unrecorded easements were not within the title insurance policy’s coverage); Krause, 390 So.2d at 806 (acknowledging that title insurance policies do not presume to insure against infirmities not of record).
Florida law requires a title insurer to competently search the record title before issuing a policy. See § 627.784, Fla. Stat. (2005) (“A title insurance policy or guarantee of title may not be issued without regard to the possible existence of adverse matters or defects of title”). Here, as in McDaniel, the Fund “totally overlooked the recorded easement.” McDaniel, 327 So.2d at 855. Because the Buyers were entitled to rely on the policy’s guarantee that there were no recorded easements on the property, we find that placing the burden of loss on the Buyers is error. See also Amidano v. Donnelly, 260 N.J.Super. 148, 615 A.2d 654 (1992) (finding that the insurer bears the risk of loss where an easement is of record).
The maintenance easement here was not “so obvious that a reasonable person upon inspection of the premises should perceive the encumbrance.” McDaniel, 327 So.2d at 855. In McDaniel, the easement was held by a power company to maintain a power line on the property. Even though the buyers saw the power line when they purchased the land, this court held “since *72 the power line traversed the edge of the property, it does not follow that a reasonable person must be held to the constructive knowledge that the easement was inside the boundary line.” Id. at 856. Here, the property contained no significant feature to put the Buyers on notice of the county’s easement to maintain the adjacent creek. The Buyers’ knowledge of the creek’s existence is not sufficient to preclude the Fund’s liability where the Fund failed to discover the easement on record.
We also find that summary judgment for the Sellers was improper, and we reject the Sellers’ argument that the sales contract merged into the Sellers’ warranty deed, which made an exception for recorded easements. Here, the sales contract provided that the Sellers would convey marketable title by statutory warranty deed. The deed here stated “that said land is free of all encumbrances, except taxes accruing subsequent to December 31, 2004.” However, six lines above this language, a clause in the deed stated the conveyance was “[sjubject to taxes for 2005 and subsequent years; covenants, conditions, restrictions, easements, reservations and limitations of record, if any.” (Emphasis added.) Therefore, we find inherent conflict within the deed, which converted the bargained-for statutory warranty deed described in the sales contract into a nullity. Here, the Sellers cannot hide behind the merger doctrine to avoid liability for breach of the sales contract.[3]
For the reasons stated above, summary judgment for the Fund and the Sellers was improper where the Fund failed to discover an easement of record and the Sellers conveyed less than what was bargained for in the sales contract. Accordingly, we reverse the trial court’s final summary judgment in favor of the Fund and the Sellers.
Reversed.
VILLANTI, J., and GALLEN, THOMAS M., Associate Senior Judge, Concur.

. Interestingly, the attorney who wrote the title insurance policy here previously represented the Sellers when they originally purchased the property in 2000. A survey taken incident to the 2000 transaction revealed the county’s maintenance easement.

. This court also determined the insurance policy in McDaniel was ambiguous and noted that any ambiguity in the policy must be strictly construed against the insurer. McDaniel, 327 So.2d at 854-55. Here, we decline to address the ambiguity issue since it does not affect the outcome of our decision.

. Under the merger doctrine, " '[i]t is a general rule that preliminary agreements and understandings relative to the sale of property usually merge in the deed executed pursuant thereto.' " Engle Homes, Inc. v. Jones, 870 So.2d 908, 910 (Fla. 4th DCA 2004) (quoting Milu, Inc. v. Duke, 204 So.2d 31, 33 (Fla. 3d DCA 1967)). The purpose of the merger doctrine is not applicable under the circumstances here because the deed language conflicts with the bargained-for sales contract.