[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12264

Non-Argument Calendar

_____

CAMILO K. SALAS, III,
as Trustee of the Salas Children Trust,

Plaintiff-Appellant,

*versus*

COMMONWEALTH LAND TITLE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:21-cv-00890-MCR-HTC

_____

Before WILLIAM PRYOR, Chief Judge, ABUDU, Circuit Judge, and BARBER,* District Judge.

PER CURIAM:

Plaintiff-Appellant Camilo K. Salas, III, as Trustee (the "Trustee") of the Salas Children Trust (the "Trust"), appeals the grant of summary judgment in favor of Defendant-Appellee, Commonwealth Land Title Insurance Company ("Commonwealth"), in a declaratory judgment action arising out of a title insurance policy the Trust purchased from Commonwealth.

For the reasons set forth herein, we affirm the judgment of the district court.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

In 2009, the Trust purchased property in Alys Beach, Florida (the "Lot") from a developer, Ebsco Gulf Coast Development, Inc. ("Ebsco"). The Trustee—on behalf of the Trust—and Ebsco entered into a Purchase and Sales Agreement (the "Purchase Agreement") for the Lot. The Purchase Agreement contained a clause that required the Trust to build on the Lot within two years of purchase. If the Trust failed to build on the Lot within the mandatory two-year period, the Purchase Agreement provided Ebsco a

_____

* Honorable Thomas P. Barber, United States District Judge for the Middle District of Florida, sitting by designation.

repurchase option and the ability to recover fines and monthly liquidated damages.

After closing on the Lot, Commonwealth issued a Florida Owner's Title Policy (the "Policy") to the Trust, providing insurance coverage for the Trust's title to the Lot. The Policy contained a standard exclusion provision ("Standard Exclusion 3(a)") that excluded from coverage "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured claimant." The Policy also exempted from coverage any losses or damages related to the Declaration of Covenants, Conditions and Restrictions for the Neighborhood of Alys Beach (the "Declaration of Covenants") and the Warranty Deed, both of which were documents specifically identified in Schedule B of the Policy. The Declaration of Covenants and the Warranty Deed contained the same two-year construction requirement and repurchase option as the Purchase Agreement, but they did not contain a liquidated damages provision. Commonwealth knew of the Purchase Agreement when it issued the Policy to the Trust. The Purchase Agreement, however, was not identified as an exception to coverage in Schedule B.

The Trust failed to build on the lot within the mandatory two-year period, and Ebsco sued the Trustee for breach of the Purchase Agreement, the Declaration of Covenants, and the Warranty Deed ("the Ebsco Lawsuit"). After almost three years of litigation, Ebsco and the Trustee settled. The Trustee, however, incurred nearly a million dollars of fees and costs in defending the Ebsco

Lawsuit. During the Ebsco Lawsuit, the Trustee sought defense and indemnification from Commonwealth pursuant to the Policy. Commonwealth denied coverage.

To enforce coverage pursuant to the Policy, the Trustee initially filed suit against Commonwealth in Louisiana state court, but Commonwealth removed the action to federal court, and that federal court transferred the action to the Northern District of Florida. The Trustee then filed an amended complaint. In lieu of an answer, Commonwealth filed a motion to dismiss the amended complaint. On February 15, 2022, the Trustee filed a 64-page motion for summary judgment that included 29 exhibits. The following day, Commonwealth filed an omnibus motion. In that motion, Commonwealth moved to stay the action and reset the scheduling order or, alternatively, supplement its motion to dismiss which the district court could then construe as a motion for summary judgment. Commonwealth sought to supplement its motion to dismiss with the Trustee's deposition transcript as an exhibit. During his deposition, the Trustee testified that he read the Purchase Agreement and, at the time that he signed it, he understood that he committed the Trust to the terms of the Purchase Agreement, including the liquidated damages clause.

Commonwealth also filed a response in opposition to the Trustee's motion for summary judgment and included the Trustee's deposition transcript as an exhibit to its response. On March 2, 2022, the Trustee filed a response opposing Commonwealth's motion to supplement and provided two exhibits in support of its

position. Additionally, the Trustee filed a reply in support of its motion for summary judgment and failed to make any arguments relating to the deposition transcript.

Over a month later, on April 5, 2022, the magistrate judge granted Commonwealth's request to supplement the motion to dismiss with the Trustee's deposition transcript as an exhibit. That same day, the magistrate judge issued a report and recommendation ("R&R"), recommending that the district court treat Commonwealth's motion to dismiss as a motion for summary judgment, grant Commonwealth's motion for summary judgment, and deny the Trustee's motion for summary judgment. The magistrate judge also recommended that Florida law applied; Standard Exclusion 3(a) barred coverage; and no abstractor liability applied.

On April 19, 2022, the Trustee filed an objection to the R&R, arguing that the district court should reject the magistrate judge's recommendation to convert Commonwealth's motion to dismiss into a motion for summary judgment without providing proper notice. On June 9, 2022, the district court adopted the R&R in its entirety and entered judgment in favor of Commonwealth the next day.

## II.    STANDARD OF REVIEW

We review a district court's adoption of a magistrate judge's R&R for abuse of discretion, *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006), but we review a grant of summary judgment *de novo*, *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999). Summary judgment is appropriate when the

evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III.    DISCUSSION

The Trustee presents four arguments on appeal: (1) the district court erred when it converted Commonwealth's motion to dismiss into a motion for summary judgment because it did so without providing fair notice; (2) the district court erred in concluding that the Policy's Standard Exclusion 3(a) precluded coverage; (3) by failing to list the Purchase Agreement in Schedule B, Commonwealth demonstrated that it was aware of the liquidated damages clause and agreed to insure over that risk; and (4) the district court improperly analyzed the abstractor liability claim.

### A.  12(b)(6) Motion Conversion

Federal Rule of Civil Procedure 12(d) requires a district court to convert a Rule 12(b)(6) motion to dismiss into one for summary judgment under Rule 56 when matters outside the pleadings are presented to and not excluded by the court. A court has discretion to consider matters outside the pleadings. *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). However, once a court decides to consider such matters, "it must convert the motion to dismiss into one for summary judgment." *Id.* (citing *Carter v. Stanton*, 405 U.S. 669, 671 (1972)).

Whenever a court converts a 12(b)(6) motion to dismiss into one for summary judgment, it must give the parties 10 days' notice

to allow them to supplement the record. *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002). We acknowledge a limited exception to the notice requirement in unique circumstances where "all of the parties were well aware that the judge was converting th[e] 12(b)(6) motion and . . . the parties made all the arguments and submitted all the documents that they would have presented had they received the notice to which they were entitled." *Prop. Mgmt. & Invs.*, 752 F.2d at 605.

Here, the district court erred in failing to provide the 10 days' notice. Nevertheless, such error does not require us to reverse and remand because the limited exception presented in *Property Management* applies. Commonwealth sought to supplement the motion to dismiss after the Trustee had presented all the arguments it sought to present in a 64-page motion for summary judgment and had submitted 29 exhibits in support of its arguments.

Further, Commonwealth sought to supplement the motion to dismiss with one document—the Trustee's deposition transcript. Significant, however, is the fact that Commonwealth also provided a copy of the Trustee's deposition transcript—the very document with which it sought to supplement the motion to dismiss—as an exhibit to its response in opposition to the Trustee's motion for summary judgment. In the reply brief supporting the Trustee's motion for summary judgment, the Trustee did not even address the deposition transcript let alone present any arguments as to why the Trustee's statements should not be considered in

support of either Commonwealth's motion to dismiss or converted motion for summary judgment.

The Trustee had more than "a reasonable opportunity" to submit additional documents in support of its position and in opposition to Commonwealth's converted motion for summary judgment. Fed. R. Civ. P. 12(d). Two months elapsed between the magistrate judge's recommendation to convert Commonwealth's motion to dismiss and the district court's adoption of that recommendation. The record clearly shows that the Trustee actively participated in the motions practice, submitted over 40 documents in support of and opposition to the parties' positions, was not prohibited from submitting additional documents prior to the deadline for responding to Commonwealth's motion, and had ample opportunities to challenge reliance on Commonwealth's exhibits, including the Trustee's admittedly damaging deposition testimony. After reviewing all the arguments and documents submitted by the parties and considering materials outside the pleadings, Rule 12(d) mandated that the district court convert the 12(b)(6) motion to dismiss into a motion for summary judgment. Thus, this case represents the very "unique" circumstance where the district court's failure to notify the parties before it converted the motion to dismiss into a motion for summary judgment was harmless. Therefore, we need not remand this case, but instead decide it on the merits at this time.

As a preliminary matter, because the insurance contract was issued by an agent in Florida and the issues the parties ask us to

22-12264                Opinion of the Court                9

resolve are ones of contract construction, Florida law governs the interpretation of the Policy and its application here.

Florida law construes insurance policy exclusions narrowly and resolves any ambiguity in the contract against the insurer and in favor of coverage for the insured. *State Farm Fire & Cas. Co. v. Metro. Dade Cnty.*, 639 So. 2d 63, 65 (Fla. Dist. Ct. App. 1994). "[W]here the language of a policy is clear and unambiguous on its face, the policy must be given full effect." *Id.* (quoting *Am. Motorists Ins. Co. v. Farrey's Wholesale Hardware Co.*, 507 So. 2d 642, 645 (Fla. Dist. Ct. App. 1987)).

Generally, a title insurer cannot avoid liability for a defective condition not exempted from coverage. *Laws. Title Ins. Corp. v. D.S.C. of Newark Enters., Inc.*, 544 So. 2d 1070, 1072 (Fla. Dist. Ct. App. 1989). Florida courts, however, "loathe to impose liability on a title insurer for a condition of which the insured had actual, express knowledge." *Id.* at 1073. Therefore, "conditions that are *expressly* assumed by the insured" are exempted from coverage. *Id.* at 1072 (emphasis added).

Florida law determines an insurer's duty to defend "solely on the facts and legal theories alleged in the pleadings and claims against the insured." *Laws. Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977)). The duty to defend is trigged "when the relevant pleadings allege facts that 'fairly and potentially bring the suit within policy coverage.'" *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014)

(quoting *JDC (Am.) Corp.*, 52 F.3d at 1580).

### B. The Policy's Standard Exclusion 3(a)

The Trustee argues that the district judge erred in concluding that the Policy's Standard Exclusion 3(a) precluded coverage for the liquidated damages and penalties that the Trust incurred.

Standard Exclusion 3(a) bars coverage for "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured claimant." Here, the district court, in adopting the R&R, properly construed this provision as precluding coverage if an insured failed to perform a contractual obligation that the insured "assumed or agreed to." During his deposition, the Trustee testified that, on behalf of the Trust, he reviewed the Purchase Agreement before signing it, and he was aware of the liquated damages clause that imposed penalties if the Trust failed to build on the Lot within the mandatory two-year period. By the Trustee's admission, the Trust "assumed or agreed to" the terms of the Purchase Agreement. Any resultant harm, such as being subject to liquidated damages and penalties, that the Trust suffered was by its own doing.

The plain language of Standard Exclusion 3(a) is clear and unambiguous, and it is susceptible to one reasonable interpretation: it excludes coverage for the liquidated damages and penalties that the Trust incurred when it agreed to the terms of the Purchase Agreement and subsequently breached its contractual obligations. We reject any other interpretations. *See Auto-Owners Ins. Co v. Anderson*, 756 So. 2d 29, 33 (Fla. 2000) (stating that where "the policy

language is clear and unambiguous," it "must be construed in accordance with 'the plain language of the polic[y] as bargained for by the parties.'" (alteration in original) (citation omitted)).

## C. Schedule B Exceptions

The Trustee's additional argument that Commonwealth's failure to list the Purchase Agreement in Schedule B evinces that Commonwealth was aware of the liquidated damages clause and agreed to insure over that risk is unpersuasive. The record is clear that, when the Trust executed the Purchase Agreement, it had actual knowledge that it would incur the penalty of paying monthly liquated damages to Ebsco if it failed to construct on the Lot within the mandatory two-year period. The Trustee has failed to present evidence that, despite the Trust's assumption of the liquated damages penalty, Commonwealth agreed to provide coverage for that risk. To adopt the Trustee's position would contravene the purpose of title insurance, which is to protect real estate purchasers against title surprises and not to provide a windfall to purchasers who knowingly assume adverse conditions.

The Trustee's third argument is that even if Commonwealth had no duty to indemnify, it had a duty to defend the Trust in the Ebsco Litigation because the allegations set forth in the Ebsco Litigation complaint brought that suit within the Policy's coverage. Yet, the Trustee neglects to address how the Ebsco Litigation fit within the scope of the Policy and thus gave rise to Commonwealth's duty to defend. As explained above, Ebsco sued the Trustee because of the Trust's failure to construct on the Lot

within the required two-year period—an express requirement of the Purchase Agreement.  The Policy, however, does not provide coverage for the Trust's breach of its contractual duties under the Purchase Agreement.  Thus, because the Ebsco Litigation was conditioned solely upon the Trust's breach of the Purchase Agreement, the Ebsco Litigation is not within the scope of the Policy's coverage, and Commonwealth had no duty to defend.

## D.  Abstractor Liability Claim

The Trustee's fourth and final argument contends that the district court improperly analyzed its claim for abstractor liability. The Trustee argues that Commonwealth had a duty to investigate the title thoroughly and to inform the Trust that the Purchase Agreement imposed monthly liquidated damages and other penalties in the event of the Trust's breach.  In response, Commonwealth argues that the liquated damages clause in the Purchase Agreement is not a discoverable defect or an encumbrance to title that it had a duty to disclose.

The parties dispute whether the liquated damages clause in the Purchase Agreement is an encumbrance or title defect.  Without deciding the issue of whether the liquated damages clause is a defect or an encumbrance to title, we conclude there is no abstractor liability.  As we have previously discussed, the Trust expressly "assumed or agreed to" the terms of the Purchase Agreement. Thus, the Trust was not "surprised" by the liquated damages clause, or any other penalties imposed against it when it breached its contractual duties under the Purchase Agreement.

## IV.    CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's grant of summary judgment in favor of Commonwealth.