**Henry BRADFORD et ux., Petitioners,**

v.

**Walton E. THOMPSON et al., Respondents.**

**No. B–2503.**

Supreme Court of Texas.

July 21, 1971.

Rehearing Denied Oct. 6, 1971.

Margolis & Staffin, Harry W. Margolis, Dallas, for petitioners.

Clifford Thyfault, Brady, Drake & Wilson, Edward J. Drake, Charles H. Storey, Frank Cusack, Dallas, for respondents.

McGEE, Justice.

Walton E. Thompson sued Henry Bradford and his wife in trespass to try title. The Bradfords answered with a plea of not guilty and filed a counterclaim for damages

for fraud. In addition, they also filed cross-actions against Style-Rite Homes, Inc. ("Style-Rite"), Security Savings Association ("Security"), W. B. Post ("trustee"), Fidelity Title Company and Security Title & Trust Company ("title companies") and joined Mrs. Thompson as an involuntary plaintiff. Various motions for summary judgment were filed by the plaintiffs and by all the cross-defendants. The Bradfords filed a motion for a partial summary judgment. The trial court granted the motions for summary judgment in favor of the plaintiffs and the cross-defendants, and the court of civil appeals affirmed. 460 S.W.2d 932. We affirm in part and reverse in part the judgment of the court of civil appeals and render judgment in that part of the cause reversed.

The controlling issue in this case is whether or not the Bradfords were in default at the time of the foreclosure by Thompson of a second lien on the property here in dispute. The following facts gave rise to this lawsuit. On October 13, 1964, Bradford and his wife entered into a *contract* with Style-Rite for the purchase of a house and lot situated in Dallas County for a total consideration of $8,000, payable $1,200 in cash, "$6,800.00 mortgage, $60.00 per month, principal and interest 6%, plus taxes and insurance." Style-Rite did not own the property at the time the contract was executed but was in the process of buying it from Thompson. On October 15, 1964, two days after the execution of the contract, Style-Rite purchased the property from Thompson, assumed the unpaid balance due upon a note to Murray Mortgage Company in the amount of $1,553.34 and delivered to Thompson its second lien note in the amount of $1,553.34.

Also on October 15, Style-Rite executed a *deed* conveying the property to the Bradfords. The deed recited a total consideration of $8,000, payable $1,200 in cash and the assumption of the balance due on the first lien note held by Murray Mortgage Company in the amount of $5,246.66, together with the assumption of the second lien note executed by Style-Rite to Thompson in the amount of $1,553.34. The assumption clause in the deed recited that each of said notes was payable as provided therein and was secured by a deed of trust. The deed of trust securing the second lien note named W. B. Post as the trustee. The Bradfords demanded a title policy prior to consummation of the sale. The closing of the sale took place after Fidelity Title Company agreed to issue the policy. The trustee, an agent of the title company, was in charge of the closing. The parties appeared at the title company office at various times between October 19 and October 26, 1964, bringing the signed instruments, documents and checks. The trustee subsequently recorded the deed. The title policy was received by the Bradfords in the mail around November 2, 1964. They took possession of the property here in dispute shortly thereafter. Subsequently they received the deed.

The Bradfords also received a letter dated November 11, 1964, from Security Savings Association, advising them that the $1,553.34 note assumed by them in the deed had been deposited with Security for collection. The letter indicated that $10 monthly payments were to be made to Security beginning November 15, 1964. Thereafter, the Bradfords promptly made the payments due under both of the notes. In August of 1966 they paid off the larger note to Murray Mortgage Company approximately four years ahead of the maturity date. Immediately thereafter they voluntarily increased their payments on the $1,553.34 note from $10 a month to $70 per month and continued to make such payments until February, 1967, when they stopped making any payments. The Bradfords maintain that they stopped making payments only because they were refused the right to pre-pay the second lien note in its entirety.

Thompson, through his attorney, by a letter dated June 5, 1967, notified the Bradfords that the second lien note was in arrears and that unless the payments were

made current, the property would be posted for sale under the terms of the deed of trust. No further payments were made and the property was subsequently sold on January 2, 1968 to Thompson. Thompson called upon the Bradfords to relinquish possession but they refused; he then instituted a forcible entry and detainer suit against them, but was unsuccessful. He then brought this suit in trespass to try title. The parties were joined by the various pleadings noted above.

The Thompsons plead the title they acquired by the foreclosure sale. The Bradfords filed a general denial and a counter-claim which alleged, *inter alia,* fraud on the plaintiffs' part in connection with the inclusion of the second lien note for $1,-553.34 in the terms of the deed. The Bradfords also specifically alleged that the trustee's sale of January 2, 1968, was void since there was no actual default in the payments due at that time. The Bradfords also brought cross-actions against Style-Rite and the trustee alleging fraudulent misrepresentation; against the title companies for the value of their policy with those companies and for attorneys' fees; and against Security for fraudulent misrepresentation and for willfully and maliciously injuring the cross-plaintiffs by refusing to let them pre-pay the second lien note.

The original plaintiffs and all the cross-defendants filed motions for summary judgment maintaining, *inter alia,* that the Bradfords had notice of the terms of the deed before it was signed and were charged with knowlege of the second lien note and deed of trust and that thus no fraud could have been practiced upon them. The plaintiffs also asked for summary judgment on their original suit for title and possession. The title companies, in addition, plead that this type of "defect" of title was specifically excluded by the policy that they had issued as it was brought about by the fault of the insured. The Bradfords filed a motion for partial summary judgment maintaining that, as a matter of law, they were not in default upon the date of foreclosure and that the foreclosure was and is null and void. The motion also asked for summary judgment against the title companies except on the issue of damages.

On the basis of the various documents, instruments and interrogatories the trial court granted the motions of the original plaintiffs and the cross-defendants and denied the motion of the Bradfords. The court of civil appeals affirmed.

We reverse the judgment of the court of civil appeals in as far as it upholds the granting of the plaintiffs' motion for summary judgment as to title and possession. We conclude that the note was not in default at the time of foreclosure, and thus the foreclosure was null and void.

The pertinent part of the note provides as follows:

The principal of this note is payable in equal monthly installments of $10.00 each including interest, said installments to be credited first to the interest accrued to date of such installments and the balance to the reduction of principal; the first installment being due and payable on or before the 15th day of November 1964 and one installment to become due and payable *on or before* the 15th day of each succeeding month thereafter for a period of 136 months; at that time the payments will be increased to $60 per month until interest and principal is paid in full. The interest on this note is payable as set out above and all past due principal and interest shall bear interest from maturity at the rate of ten per cent per annum. (Emphasis ours).

The Bradfords had paid $700 to Security on the second lien note as of February, 1967, when only $280 would have been required to have been paid under the note's schedule of payments. As of the date of foreclosure, January, 1968, a total of $390 was required to have been paid under the terms of the note.

The original plaintiffs and the cross-defendants argue, and the court of civil appeals reasoned, that the excess payment constituted payment on the principal and did not relieve the Bradfords from making regular monthly payments to cover the interest. It is our belief that the rules governing application by a creditor of payments made by a debtor are inapposite here. Those rules are designed for situations where there are two or more debts being held by a creditor but there has been only one payment. 70 C.J.S. Payment § 72 (1951). The question here is not one of application of payments, but rather will an excess payment in one month be applied to satisfy a required payment in a subsequent month when an obligation calls for payments "on or before" a certain day of each month.

There are few cases dealing with this precise point. In McBride v. Stewart, 68 Utah 12, 249 P. 114 (1926), an installment agreement in a contract of sale provided for a down payment of $74 and installments of "$30 or more on or before the 25th day of each following month." The Utah Supreme Court held that the contract required the purchaser to make a payment in every calendar month. It is apparent that the words "or more" make this a strong case for the holder of the note. *Accord.* DeVilliers v. Balcomb, 79 N.M. 572, 446 P.2d 220 (1968). It has also been noted, however, that "[i]n the absence of the words quoted, the contention would seem plausible that the vendor could not terminate the contract if the average payments made complied with those stipulated in the contract." Annot., 48 A.L.R. 273 (1927).

In an earlier case, the California Supreme Court was confronted with a situation more like the instant one and reached an opposite result from that reached by the Utah Court. In Los Angeles Investment Co. v. Wilson, 181 Cal. 616, 185 P. 853 (1919) the parties had entered into a lease-purchase agreement which the court construed in the same manner as a contract of sale. Under the agreement, payments of $36 per month were to be applied first toward accrued interest and the balance towards the principal. The defendant-obligor had made irregular payments and when the suit was commenced had made no payments at all for several months. The average of the payments up to the commencement of the suit was, however, over $36 per month. The court held the defendant not to be in default, and that any amount paid in excess of $36 in any given month was to be considered another payment being made "on or before" any date on which he failed to make a $36 payment.

We find the logic of the *Wilson* case persuasive and conclude that the Bradfords' motion for partial summary judgment insofar as it requests that the foreclosure of January 2, 1968, be set aside, should have been granted. By the undisputed facts in this case, the Bradfords, as a matter of law, were not in default on the second lien note on the date of foreclosure. They had, as noted above, made payment well in excess of what was required under the terms of the note.

It follows that the trial court's summary judgment awarding the Thompsons title and possession of the premises in controversy and ordering that the Bradfords take nothing by their suit to remove cloud on their title to such premises is erroneous and must be reversed. It is accordingly ordered that the causes of action of the Thompsons and the Bradfords concerning title and possession in and to the premises in question be, and they are hereby, severed; that as to such severed causes of action the judgments of the courts below awarding title and possession of the premises to the Thompsons and ordering that the Bradfords take nothing with respect to their cause for removal of cloud are reversed; and it is ordered, adjudged and decreed that the Thompsons' motion for summary judgment be denied and the

Bradfords' motion for partial summary judgment be granted and that the trustee's deed to the Thompsons be, and the same is hereby, cancelled and held for naught. As to all other causes of action, the judgment of the court of civil appeals is affirmed.