In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00065-CV
______________________________


PETE PESSEL AND DONNA PESSEL, HIS WIFE, Appellants
Â 
V.
Â 
EDWARD D. JENKINS AND LINDA A. JENKINS, HIS WIFE, Appellees


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 00C0928-202


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Edward D. and Linda A. Jenkins purchased a single family home from Pete Pessel,
a general contractor. Two years later, on June 19, 2000, the Jenkinses filed suit against
Pessel and his wife, Donna, for construction defects in the home. The Pessels filed their
answer June 28, 2000. James Cranford, Jr., the Pessels' attorney, filed a motion to
withdraw as counsel for the Pessels November 19, 2001. The trial court signed an order
November 26, 2001, allowing Cranford to withdraw and instructed that "all further notice
concerning settings in this matter shall be served upon Mr. Pete Pessell [sic] personally." 
Trial was held January 14, 2002, but the Pessels failed to appear. The court rendered
judgment that same date in favor of the Jenkinses for damages of $37,752.00, attorney's
fees of $7,500.00, and all costs of court. 
Â Â Â Â Â Â Â Â Â Â The Pessels filed a motion for new trial February 12, 2002, alleging they were not
given notice of the trial setting. An affidavit from Pete Pessel was included with the motion
for new trial, which stated in relevant part:
Â 
3. . . . . I have received a copy of a judgment taken in this matter which is
attached to this affidavit as Exhibit "A." This judgment was rendered without
any notice to me. I was not given any notice of a trial setting by the Bowie
County District Clerk or by counsel for the Plaintiff.
Â 
4. Further, I had been at a mediation in another case with the attorney for
the Plaintiff in this matter and no mention or discussion of a trial setting in
this case was ever provided to me at that mediation or at any time by
Plaintiff's counsel.
Â 
5. Valid legal defenses exist to this matter which I am prohibited from
presenting to the Court in my defense as no notice was given to me of this
matter. 

Â Â Â Â Â Â Â Â Â Â In response to the Pessels' motion for new trial, the Jenkinses alleged they sent
notice of the January 14 trial setting to the Pessels using two methods: by certified mail,
return receipt requested, and by regular mail. The certified mail was returned
"UNCLAIMED." The Jenkinses assert the notice sent by regular mail was not returned. 
The trial court denied the Pessels' motion for new trial. The Pessels appeal, asserting two
points of error: (1) their constitutional rights of due process were violated because they
were not given notice of the trial setting; and (2) the trial court abused its discretion by
failing to grant their motion for new trial.
Â Â Â Â Â Â Â Â Â Â The parties in a lawsuit are entitled to notice of the first trial setting at least forty-five
days before the trial. Tex. R. Civ. P. 245. This notice can be accomplished by delivering
a copy to the party to be served either in person or by agent or by courier receipted delivery
or by certified or registered mail, to the party's last known address, or by telephonic
document transfer to the recipient's current telecopier number, or by such other manner
as the court in its discretion may direct. Tex. R. Civ. P. 21a. A defendant who has made
an appearance in a cause is entitled to notice of the trial setting as a matter of due process
under the Fourteenth Amendment. LBL Oil Co. v. Int'l Power Servs., Inc., 777 S.W.2d 390,
390â91 (Tex. 1989). A defendant who does not receive notice of a post-answer default
judgment proceeding is deprived of due process. Id. 
Â Â Â Â Â Â Â Â Â Â A certificate by a party or an attorney of record, or the return of an officer, or the
affidavit of any person showing service of a notice is prima facie evidence of service. Tex.
R. Civ. P. 21a. This rule sets up a presumption that notice of a trial setting was duly
received. However, this presumption may be rebutted by an offer of proof that the notice
was not received. Cliff v. Huggins, 724 S.W.2d 778, 780 (Tex. 1987). Here, there was no
offer of a certificate by the Jenkinses or their attorney of record, nor did they offer the
return of an officer or an affidavit from a person showing service of a notice. 
Â Â Â Â Â Â Â Â Â Â The record indicates the Jenkinses sent notice to the Pessels of the January 14
setting by certified mail, with attempted delivery November 30 and December 5. However,
this notice was returned unclaimed December 15. The Jenkinses also sent notice of the
trial to the Pessels by regular mail, which they contend was not returned. At the hearing
on the motion for new trial, the trial court concluded the Pessels had received constructive
notice of the trial setting and denied their motion for new trial. 
Â Â Â Â Â Â Â Â Â Â In its ruling, the trial court relied on Gonzales v. Surplus Ins. Servs., 863 S.W.2d 96,
102 (Tex. App.âBeaumont 1993, writ denied), overruled in part on other grounds,
Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682 (Tex. 2002). In that case, the
plaintiff had mailed three sets of documents to the defendant by certified mail. The first set
of documents was returned to the plaintiff after two failed attempts at delivery. Id. at 98. 
The second set of documents was accepted by the defendant, but then a third set of
documents was returned to the plaintiff after two failed attempts at delivery. Id. The
Beaumont Court of Appeals held, 
where it is shown . . . that a party has fully complied with the notice
requirements set forth in TEX. R. CIV. P. 21a . . . yet fails to establish actual
receipt of notice upon opposing party or counsel, such notice shall be
sufficient constructive notice where it is shown that the intended recipient
engaged in instances of selective acceptance/refusal of certified mail relating
to the case.

Â Â Â Â Â Â Â Â Â Â The Jenkinses contended at the hearing on the motion for new trial, and contend
before this Court, that the Pessels received constructive notice of the trial setting. 
However, the facts of this case are distinguishable from those in Gonzales. In this case,
there was one mailing of notice by certified mail, which was attempted to be delivered
twice. The notice was returned unclaimed. In Gonzales, there were multiple sets of
documents sent by certified mail. Moreover, one of the sets was actually accepted by the
defendants. Nonetheless, the Jenkinses assert they gave notice to the Pessels by way of
regular mail in addition to the certified mail attempt. The fact that such regular mail was
not returned is what the Jenkinses assert is constructive notice and is what brings this case
within the purview of Gonzales. The trial court agreed:
Plaintiff's Exhibit Number One reflects that on the certified mail that it was --
the first attempt, notice was left, looks like November 30th. Another notice
was left on December 5th, and then it was finally returned on
DecemberÂ 15th. There is no notice of -- or there is no return of the letter that
was just sent by regular mail. 
Â 
I'm going to find that constructive notice was received and I'm going
to deny the motion. And I think that falls within the purview of this case. 

Â Â Â Â Â Â Â Â Â Â We disagree. Notice by regular mail is not an authorized method of service under
Rule 21a. The fact the notice sent by regular mail was not returned was not evidence of
"selective acceptance/refusal of certified mail," as in Gonzales. The Jenkinses offered no
other proof of "selective acceptance/refusal." Further, the Pessels offered an affidavit
which unequivocally denied receiving notice of the trial setting. Considering these facts,
the trial court erred in determining the Pessels received constructive notice of the trial
setting. The Pessels' first point of error is sustained. 
Â Â Â Â Â Â Â Â Â Â The trial court's decision on a motion for new trial is reviewed for an abuse of
discretion. Cliff, 724 S.W.2d at 778â79. To grant a motion for new trial, the court must
determine that: (1) the defendant's failure to answer before judgment was not intentional
or the result of conscious indifference on the defendant's part, but was due to a mistake
or accident; (2) the motion for new trial sets up a meritorious defense; and (3) the motion
is filed at a time when its granting would not result in a delay or otherwise injure the
plaintiff. Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126
(1939). The Jenkinses contend the Pessels offered no evidence to satisfy any of the
Craddock factors. However, a party who has been denied due process through lack of
notice of a trial setting satisfies the first Craddock factor and does not have to meet the
remaining requirements to be entitled to a new trial. Smith v. Holmes, 53 S.W.3d 815, 817
(Tex. App.âAustin 2001, no pet.); Green v. McAdams, 857 S.W.2d 816, 819 (Tex.
App.âHouston [1st Dist.] 1993, no writ). As discussed above, the evidence shows the
Pessels did not have notice of the trial setting. This entitles them to a new trial; therefore,
it was an abuse of discretion for the trial court to conclude otherwise. The Pessels' second
point of error is sustained. 
Â Â Â Â Â Â Â Â Â Â We reverse the judgment and remand for a new trial.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â Â Â Â Â Â Â Â Â Â Â 
Date Submitted:Â Â Â Â Â Â January 8, 2004
Date Decided:Â Â Â Â Â Â Â Â Â January 13, 2004




94, no writ). Rescission of a contract is an equitable remedy used as a substitute for monetary
damages when such damages would not be adequate. Scott v. Sebree, 986 S.W.2d 364, 368 (Tex.
App.--Austin 1999, pet. denied). Whether to grant rescission lies within the trial court's discretion. 
See Gentry v. Squires, 188 S.W.3d 396, 410 (Tex. App.--Dallas 2006, no pet.); Barker v. Roelke,
105 S.W.3d 75, 84 (Tex. App.--Eastland 2003, pet. denied); Tex. Capital Secs., Inc. v. Sandefer,
58 S.W.3d 760, 774 (Tex. App.--Houston [1st Dist.] 2001, pet. denied); Humphrey, 893 S.W.2d at
59; Schenck v. Ebby Halliday Real Estate, Inc., 803 S.W.2d 361, 366 (Tex. App.--Fort Worth 1990,
no writ).

 Bishop sought to rescind the contract based on the jury finding that Isaacs engaged in fraud
in connection with the purchase. A contract is subject to avoidance on that ground. Williams v.
Glash, 789 S.W.2d 261, 264 (Tex. 1990). In such a situation, an allegedly defrauded plaintiff has
a choice to make, whether to claim the equitable remedy of rescission for fraud and try to get his or
her property back or to affirm the transaction and seek damages. Calstar Props., L.L.C. v. City of
Fort Worth, 139 S.W.3d 433, 440 (Tex. App.--Fort Worth 2004, no pet.); Scott, 986 S.W.2d at 368.

 To be entitled to rescission, a party must show that (1) he or she and the defrauding party are
in the status quo (i.e., there are no retained benefits received under the instrument and not restored
to the other party) or (2) there are equitable considerations that obviate the need for the status quo
relationship. Gentry, 188 S.W.3d at 410; Shenandoah Assoc. v. J & K Prop., Inc., 741 S.W.2d 470,
475 (Tex. App.--Dallas 1987, writ denied) (citing Boyter v. MCR Constr. Co., 673 S.W.2d 938, 941
(Tex. App.--Dallas 1984, writ ref'd n.r.e.)). An inability to return the parties to their former position
should be considered in determining whether rescission would be equitable. See Ennis v. Interstate
Distribs., Inc., 598 S.W.2d 903, 906 (Tex. App.--Dallas 1980, no writ).

 The question is whether the trial court abused its discretion by denying Bishop's choice to
seek rescission. The factors before the trial court, in the exercise of its traditional equitable powers,
include: probability of irreparable damage to the moving party in the absence of relief, possibility
of harm to the nonmoving party if the requested relief is granted, and public interest. Wenner v. Tex.
Lottery Comm'n, 123 F.3d 321, 325 (5th Cir. 1997); Davis v. Estridge, 85 S.W.3d 308, 310 (Tex.
App.--Tyler 2001, pet. denied).

 The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court's action; rather, it is a question of whether the court
acted without reference to any guiding rules or principles; and the mere fact that a trial court may
decide a matter within its discretionary authority differently than an appellate court does not
demonstrate such an abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985).

 Under such a review, we cannot overrule the trial court's decision unless the trial court acted
unreasonably or in an arbitrary manner, i.e., without reference to guiding rules or principles. 
Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Davis v. Huey, 571 S.W.2d 859,
861-62 (Tex. 1978). Moreover, we cannot substitute our judgment for the trial court's reasonable
judgment even if we would have reached a contrary conclusion. Walker v. Packer, 827 S.W.2d 833,
839-40 (Tex. 1992); Buller, 806 S.W.2d at 226. The trial court does not abuse its discretion if some
evidence reasonably supports the trial court's decision. Butnaru v. Ford Motor Co., 84 S.W.3d 198,
204 (Tex. 2002); Davis, 571 S.W.2d at 862.

 Some evidence and a jury finding established that Bishop was at least partly responsible for
the fraud perpetrated on him. Evidence suggested that, before Bishop signed the promissory note
prepared by Schleier--who Bishop knew had a history as Isaacs' lawyer--Bishop did have, but failed
to make use of, an opportunity to read the note. The jury found that Isaacs committed fraud and was
seventy percent responsible for the damages, but that Bishop was thirty percent responsible. Some
authority suggests that a negligent party may not obtain rescission; substantial authority exists that
unclean hands will preclude such relief. See Schenck, 803 S.W.2d 361.

 We conclude from the record that the trial court's ruling was within the scope of its equitable
authority. We overrule this contention of error. (9)

(3) Ordering Bishop's Damages Offset Against Isaacs' Note Was Error

 Isaacs complains about the offset, not only because there was no total percentage of harm
determination (an argument which we addressed and rejected previously), but also because HDI is
a separate entity and Bishop's damage awards should not be offset against the amounts HDI owes
to Isaacs. (10)

 Bishop contends his actual damage award should not be offset against the principal balance
of the note because there was no acceleration of the note. Thus, he argues, the court had no basis
for requiring the due-and-payable damage award to be offset against the unmatured note. Bishop
points out that, although the trial court did not accelerate the note, it used the damage award as an
offset to prepay part of the principal balance of the note, which otherwise had a remaining fifteen-year payment term. Bishop argues that prepayments of this nature are, as a matter of law,
prepayments of the monthly payment, not just payments of principal. See Bradford v. Thompson,
470 S.W.2d 633, 635-36 (Tex. 1971) (payment in amount above monthly installment had effect of
paying other installments early). He alternatively argues that no offset should be applied at all,
because the court explicitly declined to accelerate the note and because the tort claim and the
contract claim are not appropriate for setoff against each other. Bishop's position appears to be that
if any offset is allowed at all, the offset should be against monthly payments rather than the principal
of the note. Isaacs has not responded to this argument.

 The facts of the case determine the proper measure of damages as well as any allowable
offset. Vance v. My Apartment Steak House of San Antonio, Inc., 677 S.W.2d 480, 481 n.1 (Tex.
1984); Appraisal Review Bd. of El Paso County Cent. Appraisal Dist. v. Fisher, 88 S.W.3d 807, 816
(Tex. App.--El Paso 2002, pet. denied). When opposing parties each establish recoveries against
the other, the trial court is to render judgment for the balance of the larger recovery, implicitly
providing for offset. See Tex. R. Civ. P. 302.

 We have been directed to no cases that are directly on point. But the Bradford case is
instructive and supportive of part of Bishop's argument. Unless a payment, made in an amount
above the scheduled amount, is specifically directed to be applied to principal only, the prepayment
applies to future installments to be paid on or before scheduled due dates. Bradford, 470 S.W.2d
at 635-36. Although the trial court refused Isaacs' request for acceleration of the maturity of the
note--obviously concluding there was no basis for an acceleration--the court's ordered setoff had
the effect of partially accelerating the note.

 Although Rule 97(g) of the Texas Rules of Civil Procedure allows a tort recovery to be setoff
against a contractual demand, if the two arise out of, or are incident to or connected to, the same
event, that presupposes that the party wins a current recovery on the contractual claim. See Tex. R.
Civ. P. 97(g). The court did not award acceleration to Isaacs, nor did Isaacs prevail on any other
theory in its contractual claims against Bishop or HDI.

 Setoff of mutual obligations as a matter of right is available only when both obligations are
due, unless it is established that the obligor of the unmatured obligation is insolvent. Bandy v. First
State Bank, 835 S.W.2d 609, 619 (Tex. 1992); Stockyards Nat'l Bank v. Presnall, 109 Tex. 32, 194
S.W. 384, 385 (1917). (11) We conclude that offsetting the due damage award held by Bishop against
the unmatured note held by Isaacs was error. We will reform the judgment to eliminate its offset
provision.

(4) Bishop's Recovery for Intentional Infliction of Emotional Distress Was Proper

 Isaacs also argues that the trial court erred by overruling his motion for judgment N.O.V.,
thus allowing Bishop's recovery for intentional infliction of emotional distress to stand. Isaacs
complains mainly that his efforts to foreclose and the brawl at the track could not support such a
recovery because the tort of intentional infliction of emotional distress is only a gapfiller (12) and that
the alleged physical attack could have supported a cause of action for the tort of assault.

 Isaacs' summary of the evidence is incomplete. The fist fight was not the only matter laid
at his feet. There was testimony that Isaacs threatened to bankrupt Bishop unless Bishop told police
what Isaacs wanted. As set out above, Isaacs took a number of affirmative steps aside from the
foreclosure proceedings that were designed to make Bishop's life as miserable as possible. The jury
could take the evidence as showing that Isaacs was intentionally attempting to ruin Bishop's life and
finances and that Isaacs took various actions to cause that to occur. Though some of those actions
were legal, some were not. As summarized by counsel, Bishop was threatened, intimidated, drawn
into a number of legal proceedings, made the subject of misleading publicity, and finally forced into
corporate and personal bankruptcy. As a result of Isaacs' actions, Bishop expended all of his savings
and borrowed money from his parents, actions which were insufficient to save a separate
construction business. It appears that the jury could easily have concluded that Isaacs took a number
of steps to damage Bishop and then used the legal system to assist in implementing his plan of
destruction.

 Evidence allowed the jury to conclude that Isaacs ordered Bishop to lie to cover up Isaacs'
criminal act or face being forced into bankruptcy. It is not an otherwise cognizable claim, and the
result was obviously not speculative. It is, in the language of Creditwatch, conduct "utterly
intolerable in a civilized community," and "bordering on serious criminal acts." Creditwatch, 157
S.W.3d at 818. We conclude that the cause of action was available in this situation.

 In order to prevail in his judgment N.O.V. argument, Isaacs must show conclusively that no
recovery was proper, either because the law disallows it, or because there is no evidence to support
the recovery or there is conclusive evidence to refute recovery. Because he has failed to make any
such showing, we overrule this contention of error.

(5) Bishop's Recoveries Based on Fraud Were Proper

 Isaacs next contends, in multifarious arguments, that the court erred in various ways on the
fraud question because (a) there was no evidence that Isaacs damaged Bishop by falsely representing
anything to him, (b) as a matter of law, Isaacs owed no "duty of disclosure" to Bishop, (c) the jury
also Â found Â Bishop Â to Â have Â a Â percentage Â of Â negligence, Â destroying Â any Â legal Â duty Â to Â disclose,
and (d) the "duty to disclose" instruction is fatally incorrect. We disagree. (13)

 The record reveals evidence of fraud. There was evidence that Isaacs and Bishop met with
Schleier to discuss documenting the purchase of the track, that they jointly planned to use the same
terms and documents as had been used when the Isaacses had purchased the track four years earlier,
intending to draft the promissory note to include notice and cure rights and to exclude a demand
feature. Isaacs agreed to all of this, but there is evidence that, two days before the documents were
to be mailed, Isaacs contacted Schleier and directed him to change the terms to include the demand
feature in the note. Isaacs admitted that he so instructed the attorney. Because this is some evidence
that Isaacs perpetrated a fraud on Bishop, the evidence is sufficient to defeat a judgment N.O.V.
review.

 Isaacs further contends, based on a line of real estate fraud cases under the Texas Deceptive
Trade Practices Act, that he had no legal duty to disclose information that the buyer could reasonably
be expected to discover by his own inquiry. Those cases do not apply. They involve the purchaser's
ability to discover impairments to the property itself, such as foundation defects, shifting walls, and
the like. (14)
 Those cases address the usability of the property for its intended purpose and whether
physical problems on that property are detectable. This is an entirely different situation.

 Isaacs also argues under this same contention that, as set out in Bradford v. Vento, 48Â S.W.3d
749, 755 (Tex. 2001), a failure to disclose information is not an actual fraud unless there was a legal
duty to disclose the information. While that is a correct summary of Bradford's holding, this is not
a pure failure-to-disclose case. The evidence describes more than fraud by mere silence. The
evidence supports a finding of an intentional, active course of action intended to result in a decidedly
different result than that originally contemplated by the parties. There is evidence that Isaacs made
a representation to Bishop about the note's content, but then, unilaterally and without notice to
Bishop, directed that the document be changed to remove that portion and to add another section that
completely changed the note's original content. Isaacs' cited authority is not controlling.

 The fraud finding is not one that, as a matter of law, could not be made. (15) The remedy is
available on these facts. Thus, the motion for judgment N.O.V. was properly overruled by the trial
court as to the fraud claim. We overrule this contention of error.

(6) Bishop's Recovery of Attorneys' Fees and Costs Must Be Modified

 The submission of attorneys' fees and costs to the jury was in a novel form, but was not
challenged by the parties. Predicated on the finding that Isaacs defrauded Bishop, the jury was to
answer question 15, which had multiple parts, each of which was answered as set out below:

 What is a reasonable fee for the necessary services of [Bishop's] attorney for
prosecuting the claim for fraud against . . . Isaacs, stated in dollars and cents, and
what is a reasonable fee for . . . Bishop's expert witnesses and costs of depositions,
stated in dollars and cents?


 Answer with an amount as to attorney's fees for each of the following:


 (a) For preparation and trial.


 Answer: $200,000


 (b) For an appeal to the court of appeals.


 Answer: $50,000




 (c) For an appeal to the Supreme Court of Texas.


 Answer: $35,000


 Answer with an amount for costs:


 Answer: $285,000


In the judgment, the trial court awarded Bishop a lump sum of $250,000.00 for attorneys' fees and
costs, without conditioning any portion of them on appeal and without itemization or allocation. The
trial court stated on the record, during a hearing held between trial and the entry of judgment, that
it would give judgment for $200,000.00 as attorneys' fees and $50,000.00 as costs.

 Bishop is unhappy with that result because the trial court failed to award all attorneys' fees
and litigation costs as found by the jury. In their motion for judgment N.O.V., the Isaacses asked
the trial court to remit all but $50,000.00 of that award, based on the position that the evidence was
insufficient to support any amount more than that, and, alternatively, that it should award no costs
because the evidence did not support the $285,000.00 amount of costs awarded by the jury. Isaacs
argues on appeal that the award includes $50,000.00 in costs.

 If we assume, as do all of the parties, that the trial court reduced the expert witness and
deposition costs to the $50,000.00 that all parties effectively admitted was shown by the
evidence--rather than the $285,000.00 in costs found by the jury--we are faced with a different
problem, because that leaves a remainder of $200,000.00 in attorneys' fees awarded in the
judgment--an award that did not cover all of the attorneys' fees found by the jury.

 Isaacs did not complain about the amount of the attorneys' fees, but argued that none were
recoverable for the reasons discussed above. Bishop asked for the full fees and costs found by the
jury and complains about their absence in the judgment. Bishop argues that, beyond the $285,000.00
total attorneys' fees found by the jury, there was evidence to support the full $285,000.00 in costs
found by the jury, referring us to a portion of the record that he suggests provides evidence to support
that finding. There is no such evidence at that location, and we find none anywhere else in the
record. Bishop's counsel did testify to having cut the normal rates by about one-third, from
$300,000.00 to $200,000.00, because east Texas rates were lower than those in Denton. But this
does not constitute evidence to support an award of $285,000.00 in costs. Isaacs does not argue that
there is insufficient evidence to support an award of $50,000.00 in costs, instead acknowledging that
the amount of the trial court's award was appropriate if costs were to be recovered at all. (16) Bishop's
argument as to costs is without merit and is overruled.

 The trial court erred by failing to award the full amount of attorneys' fees found by the jury. 
We reform that portion of the judgment to award the attorneys' fees found by the jury conditioned
on the final appellate level reached by the case.

 The remaining arguments are disposed of by our resolution of the contentions above. (17)

 We reform the judgment in the following respects: (1) to award to Bishop the attorneys' fees
found by the jury, conditioned as the jury so found, that is, $200,000.00 through trial, $50,000.00
for appeal to this Court, and $35,000.00 for any appeal to the Texas Supreme Court; (2) to award
Bishop $50,000.00 in expert witness and deposition costs as found by the jury; (3) to eliminate the
offset between Bishop's recovery and the balance owing on the Isaacses' note and to leave
outstanding both the note balance and the damage award. As reformed, the judgment is affirmed.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 18, 2007

Date Decided: January 10, 2008
1. In this case, the parties do not differentiate between John and Susan Isaacs, referring usually
to just the singular "Isaacs." Because no issue on appeal is affected by this fact, we follow that
convention, treating Isaacs as one person, unless the context clearly suggests otherwise.
2. There are indications that John Isaacs had previously been convicted of assault.
3. Jury awards against Schleier are no longer at issue, since he settled before judgment.
4. The standard of review for a trial court's denial of a motion for judgment notwithstanding
the verdict is to determine whether the evidence conclusively proves a fact that establishes a party's
right to a judgment as a matter of law. Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d
392, 394 (Tex. 1991). If so, then the trial court erred in denying the motion for judgment
notwithstanding the verdict. Id. On review, this Court considers the evidence and inferences tending
to support the trial court's decision, and disregards evidence and inferences to the contrary. Minyard
Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002); Oyster Creek Fin. Corp. v.
Richwood Invs. II, Inc., 176 S.W.3d 307, 322 (Tex. App.--Houston [1st Dist.] 2004, pet. denied).


 Judgment without or against a jury verdict is proper at any course of the proceedings only
when the law does not allow reasonable jurors to decide otherwise. Accordingly, the test for legal
sufficiency is the same for directed verdicts and judgments notwithstanding the verdict. City of
Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005). We view the evidence in the light most
favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not. Id. at 807; Zinda v. McCann St., Ltd., 178
S.W.3d 883 (Tex. App.--Texarkana 2005, pet. denied). This Court is not a fact-finder and may not
pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. Clancy
v. Zale Corp., 705 S.W.2d 820, 826 (Tex. App.--Dallas 1986, writ ref'd n.r.e.). Findings of fact are
the exclusive province of the jury and/or trial court. Bellefonte Underwriters Ins. Co. v. Brown, 704
S.W.2d 742, 744 (Tex. 1986). Accordingly, if there is sufficient competent evidence of probative
force to support the finding, it must be sustained. Beall v. Ditmore, 867 S.W.2d 791, 795-96 (Tex.
App.--El Paso 1993, writ denied). Where there is conflicting evidence, the jury's verdict on such
matters is generally regarded as conclusive. Id. at 796.


 The complicating factor is that, in this instance, the trial court did not render a judgment
matching the verdict. As already noted, the judgment does not match either the Isaacses' or Bishop's
preferred judgment. Thus, we have what the jury found, what Isaacs wanted, and what Bishop
wanted--and then we have what the trial court rendered--which corresponds with none of them.
5. Counsel for Isaacs has categorically pointed out in his reply brief that they have not
requested a new trial. Thus, Isaacs' evidentiary issues are, by definition, restricted to arguments that
could result in rendition of judgment, not a remand. Thus, Isaacs' issues seeking a new trial are
moot, but, Isaacs urges, the arguments remain useful in reviewing other issues in this appeal.
6. We will assume the issue was preserved, though preservation is not certain. It is apparent
that, as described by one of the counsel, there was a "sea of paper" involved in preparing this charge. 
The record of the charge conference is fairly lengthy and tedious, and it is unclear at a number of
points exactly what is being discussed. This is made even more convoluted by the fact that at least
one earlier charge conference had occurred and that counsel and court were not looking at the same
versions of the proposed charge while discussing it. This record does not reflect that Isaacs
complained about this aspect of the jury charge. 


 In his brief, Isaacs points us to the discussion surrounding an objection raised by his
codefendant, Schleier, contending that this preserves his complaint for our review. At that point,
counsel Young stated that he had prepared a jury question on proportionate responsibility between
Bishop and Isaacs and had included Schleier "because I assumed that there would only be one
proportionate responsibility claim for the whole case." Counsel Young went on to state that, if the
court was submitting


 some claims against Bishop versus Schleier and some claims Bishop versus Isaacs,
that Mr. Isaacs is entitled to a proportionate responsibility question as well, so all we
would have to do is just strike Mr. Schleier's name from that since it's only being
submitted against Mr. Bishop and Mr. Isaacs.


 The clerk's record contains a document filed March 1, 2005, labeled proposed jury
instructions, which contains a question that reads as follows:


 If you have answered Questions ___and ____ "Yes" as to more than one of
the persons named below, then answer the following question. Otherwise, do not
answer the following question.

 

 

 You should only assign percentages to the persons you find caused the
damages. The percentages you find must total 100%. The percentages must be
expressed in whole numbers. The responsibility attributable to any one named below
is not necessarily measured by the number of acts or omissions found. 


QUESTION __________




 For each person found by you to have caused the damages to Charles Bishop,
find the percentage caused by:


 a. Charles Bishop ___________%

 b. Johnny Isaacs ___________%

 c. Robert G. Schleier, Jr. ___________%

 TOTAL ______100__%


It is possible that this proposed question was designed to seek to allocate responsibility for all
damages caused by all causes of action. That, however, is by no means clear in the record. If that
was its purpose, it was not capable of doing so as written--there are simply not enough spaces left
in the form to accommodate all the questions raising damage issues. There is also no specific
objection to the piecemeal submission shown by this record. The objection by Schleier's counsel
could just as readily refer to allocation of damages in a single particular cause as to damages overall.
Combining the various discussions, however, one can see the possibility that the apportionment issue
was placed before the trial court for decision. Compare Romero v. KPH Consol., Inc., 166 S.W.3d
212, 228 (Tex. 2005).


 Rule 274 of the Texas Rules of Civil Procedure provides: "A party objecting to a charge
must point out distinctly the objectionable matter and the grounds of the objection. Any complaint
as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading,
is waived unless specifically included in the objections." See Tex. R. Civ. P. 274. There is only one
test for "determining if a party has preserved error in the jury charge, and that is whether the party
made the trial court aware of the complaint, timely and plainly, and obtained a ruling." State Dep't
of Highways v. Payne, 838 S.W.2d 235, 241 (Tex. 1992); De Leon v. Furr's Supermarkets, Inc., 31
S.W.3d 297, 299 (Tex. App.--El Paso 2000, no pet.).
7. When a damages issue is submitted in broad form, an appellate court cannot ascertain with
certainty what amount of the damages award is attributable to each element. See Kansas City S. Ry.
Co. v. Carter, 778 S.W.2d 911, 916 (Tex. App.--Texarkana 1989, writ denied). 
8. A trial court errs by overruling a party's timely and specific objection to the charge, which
mixed valid and invalid elements of damages in a single broad-form submission, and such error is
harmful because it prevents the appellate court from determining "whether the jury based its verdict
on an improperly submitted invalid" element of damage. Casteel v. Crown Life Ins. Co., 22 S.W.3d
378, 388 (Tex. 2000); see also Tex. R. App. P. 61.1(b); Harris County v. Smith, 96 S.W.3d 230, 234
(Tex. 2002).
9. Various arguments were made by the Isaacses which, because of our principal ruling on this
issue, are not dispositive. The Isaacses contend that, because the note was rewritten during the
bankruptcy, any fraud that occurred in the original writing was superseded and that HDI and Bishop
had elected at that time the remedy of rewriting or reforming the note, rather than rescinding it. But,
the bankruptcy plan itself specifically provided that all claims asserted in this pending lawsuit were
preserved and retained for enforcement, and one of those claims was a request for rescission. The
document was reformed or modified by order of the bankruptcy court, while still expressly
preserving other pending claims, including rescission. Thus, the Isaacses' argument fails on its face.


 The Isaacses also argue that, by accepting the benefits of the replacement note as imposed
by the bankruptcy court, Bishop ratified that note and eliminated any possible later attack on the
original note. Ratification occurs when a party recognizes the validity of a contract by acting under
it, performing under it, or affirmatively acknowledging it. See Zieben v. Platt, 786 S.W.2d 797, 802
(Tex. App.--Houston [14th Dist.] 1990, no writ). Ratification may either be express or implied from
a course of conduct. Once a party ratifies a contract, it may not later withdraw its ratification and
seek to avoid the contract. See Spellman v. Am. Universal Inv. Co., 687 S.W.2d 27, 29 (Tex.
App.--Corpus Christi 1984, writ ref'd n.r.e.). Any act inconsistent with an intent to avoid a contract
has the effect of ratifying the contract. See Barker, 105 S.W.3d at 85; Old Republic Ins. Co. v.
Fuller, 919 S.W.2d 726, 728 (Tex. App.--Texarkana 1996, writ denied). 


 The ratification defense raised by the Isaacses is inapplicable. The argument seems to be
that, by performing under the terms of the replacement note, Bishop ratified the original note and
thus has waived any right to complain about the original note. Certainly, Bishop did perform under
the Replacement Note. But, again, the bankruptcy court order explicitly preserved the rights under
the prior note. Thus, neither performing under the Replacement Note or seeking bankruptcy relief
would ratify wrongs done in connection with the original note.
10. HDI is a corporate entity wholly owned by Bishop. It was created, and the track properties
transferred into it in an unsuccessful attempt to avoid bankruptcy. HDI and Bishop are both liable
to Isaacs on the purchase note for the property.

11. Bandy and Presnall both deal with a bank's right of offset, but the principle is the same
here.
12. See Creditwatch, Inc. v. Jackson, 157 S.W.3d 814 (Tex. 2005).
13. In connection with the fraud cause of action, the Isaacses make other arguments, which fail
as well. They argue that the "duty to disclose" instruction in jury question 10 is "fatally incorrect."
But they did not object on that basis at trial. In the absence of an objection at trial that matches the
complaint on appeal, nothing has been preserved for our review. Tex. R. App. P. 33.1. Complaints
and argument on appeal must correspond with the complaint made at the trial court level. Century
21 Real Estate Corp. v. Hometown Real Estate Co., 890 S.W.2d 118, 124 (Tex. App.--Texarkana
1994, writ denied).


 The Isaacses also seem to contend that jury question 11 incorrectly stated the law about their
responsibility for any actions that were taken by their attorney, Schleier. But there was no objection
to the charge as given. The complaint has not been preserved for our review. Tex. R. App. P. 33.1.


 When no objection is made to a jury instruction, we review the sufficiency of the evidence
in light of the charge submitted. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 715 n.4 (Tex.
2001); City of Fort Worth v. Zimlich, 29 S.W.3d 62, 71 (Tex. 2000). In the absence of an objection,
the current complaint does not comport with the objection at trial, and we may not review it on
appeal. We must, therefore, measure the verdict by the charge given, even if the charge contains
incorrect statements of the law. We overrule this contention.


 The Isaacses also argue that the trial court erred by overruling their motion for judgment
N.O.V. for attorneys' fees for fraud in the sale of the business because the award is outside the scope
of the fraud statute pled as grounds for attorneys' fees. Without complaint by the Isaacses, the trial
court constructed the jury charge to cover both common-law and statutory real estate fraud. The
charge does not limit itself to either formulation.


 The Isaacses' argument is based on the position that the jury did not make a finding required
by Section 27.01 of the Texas Business and Commerce Code to support a fraud recovery in a
transaction involving real estate. See Tex. Bus. & Com. Code Ann. §Â 27.01 (Vernon 2002). Thus,
they assert, the attorneys' fees provided under that statute are not available. Isaacs' argument is
largely based on language within the statute which they read as requiring the plaintiff to show that
the defrauder benefitted from the fraud in order to fit within the statutory fraud umbrella. This
misreads the statute. The "benefit" language appears only in a section authorizing exemplary
damages. The charge otherwise corresponds to the requirements of the statute, and the argument
fails on its face.


 Isaacs also suggests that the attorneys' fees are unavailable because the statute does not apply
to the sale of a business that only incidentally involves real estate. The two cases they cite are not
on point. One predates the statute by forty years and does not address the sale of real estate, and the
second case involves a purchase of limited partnership interests, not real estate. Marshall v. Quinn-L
Equities, Inc., 704 F.Supp. 1384 (N.D. Tex. 1988); Ulrich v. Krueger, 272 S.W. 824 (Tex. Civ.
App.--Galveston 1924, no writ). The property transferred in this case was the land, with the
buildings and track built thereon. This fits the explicit language of the statute, and we have been
directed to no authority showing that the language means otherwise.
14. The general rule is that a seller of real estate is under a duty to disclose those material facts
which would not be discoverable by the buyer in the exercise of ordinary care and due diligence. 
Smith v. Nat'l Resort Cmtys., Inc., 585 S.W.2d 655, 658 (Tex. 1979); Robbins v. Capozzi, 100
S.W.3d 18, 24 (Tex. App.--Tyler 2002, no pet.); Pairett v. Gutierrez, 969 S.W.2d 512, 515 (Tex.
App.--Austin 1998, pet. denied).

15. Isaacs does not contend the evidence is legally insufficient; his sole argument is that the law
will not allow recovery in this type of situation.
16. As mentioned above, the Isaacses' position is that, though the amount of $50,000.00 is a
correct amount, no fees or costs should be awarded as a matter of law because the statute does not
apply to this case.
17. The Isaacses also argue in a single sentence, without authority or analysis, that they should
have been entitled to immediately accelerate the note against co-maker HDI. This argument is
inadequately presented for review. Consequently, the Isaacses have forfeited appellate review of this
argument. See Pheng Invs., Inc. v. Rodriquez, 196 S.W.3d 322, 332 (Tex. App.--Fort Worth 2006,
no pet.). We overrule that contention of error.